UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JULES NGAMBO,

                         Plaintiff,                               23-cv-963 (AEK)

        -against-                                   **DECISION AND ORDER**

SOCIAL SECURITY ADMINISTRATION,

                         Defendant.
-------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

        After the Court granted the motion for a more definite statement filed by Defendant

Social Security Administration ("SSA") on November 30, 2023, *see* ECF No. 16, *pro se* Plaintiff

Jules Ngambo ("Ngambo") filed an Amended Complaint, ECF No. 17 ("Amended Complaint"

or "Am. Compl.").  Currently before the Court is the SSA's motion to dismiss the Amended

Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 19.  In addition, while

the motion to dismiss was pending, Ngambo filed a motion to disqualify the undersigned, ECF

No. 28, and a notice of rescission, which the Court treats as a motion by Ngambo to withdraw his

consent to proceeding before the magistrate judge in this action, ECF No. 29.[1]

        For the reasons that follow, the motion to dismiss is GRANTED, and the motions to

disqualify and to withdraw consent to the magistrate judge are DENIED.

---

[1] After the motion to dismiss was fully submitted, Ngambo filed a motion for summary judgment, ECF Nos. 24-26, which the Court denied in light of the pending motion to dismiss, ECF No. 27.  Ngambo thereafter filed the motion to disqualify and the notice of rescission.

# BACKGROUND

The following facts, which the Court accepts as true for purposes of the motion to dismiss, are taken from the Amended Complaint.

In early 2022, Ngambo contacted the SSA Office in West Nyack, New York to update his immigration status. Am. Compl. ¶ 5. Per the SSA Office's instructions, Ngambo completed an application form and sent the application, along with his original Certificate of Naturalization, via certified mail to the SSA on or about March 26, 2022. *Id.* ¶¶ 5-6. Ngambo received a new social security card in early April 2022, but his Certificate of Naturalization was not returned to him. *Id.* ¶ 7.

Between April and early May 2022, Ngambo called the West Nyack SSA Office multiple times to inquire about his Certificate of Naturalization, and was told that it had been returned to him by mail. *Id.* ¶ 8. Ngambo then made trips to his local post office to inquire about mail addressed to him from the SSA, but was informed that the post office did not receive anything. *Id.* The post office asked Ngambo to provide a tracking number for the mail from the SSA. *Id.* Ngambo called the SSA Office and spoke to a representative who instructed him to fax a letter requesting the missing Certificate of Naturalization; according to Ngambo, the representative told him that after receiving the letter, the SSA Office would "investigate and attempt to locate" his missing document. *Id.* On May 11, 2022, Ngambo faxed a letter to the SSA requesting that the office find and return his Certificate of Naturalization within five days or else provide him with a new one at the agency's expense. *Id.* ¶ 9. Having received no response, on June 21, 2022, Ngambo returned to the West Nyack SSA Office and spoke to a supervisor and a claim specialist, who both admitted that they did not have any evidence, including a tracking number, to show that Ngambo's Certificate of Naturalization had been mailed back to him. *Id.* ¶ 10.

When Ngambo requested that the SSA either return the document or obtain a new Certificate of Naturalization for him, the SSA employees told him that they could not escalate the issue until Ngambo obtained a note from the postmaster at his local post office about the missing mail. *Id.*

That same day, Ngambo hand delivered a "Notice of Intend [*sic*] to Sue" to the SSA supervisor at the West Nyack Office, in which he demanded that his Certificate of Naturalization be returned or that the SSA obtain a new one for him within three business days. *Id.* ¶ 11. Ngambo also informed the SSA supervisor that he would seek compensation of $500 per hour for his time, as well as expenses, for the measures he was forced to undertake in order to attempt to obtain the return of his Certificate of Naturalization from the SSA. *Id.* ¶ 12. The supervisor at the West Nyack Office accepted the notice of intent to sue, but asked Ngambo to send it to the SSA Regional Public Affairs Office in Manhattan. *Id.* ¶ 13.

Ngambo then returned to his local post office and spoke to the postmaster, who again told Ngambo that unless the SSA mailed the Certificate of Naturalization with a tracking number, the post office had no way of knowing what happened to it. *Id.* ¶ 14. The postmaster wrote a note with his contact information and said that the SSA supervisor could call him with any questions. *Id.* The next day, June 22, 2022, Ngambo returned to the West Nyack SSA Office with the postmaster's note, but the supervisor informed him there was nothing else that she could do, and that he should send a letter to the SSA Regional Public Affairs Office. *Id.* ¶ 15. Ngambo alleges that the supervisor "had required of [him] to perform a specific task in order for her to escalate the issue, but after [he] had performed the task she now told [him] that there was nothing more she could do, thus being in dishonor by not performing her part of the agreement [they] had." *Id.*

On June 23, 2022, Ngambo sent an updated "Notice of Intent to Sue" via email and certified mail to the SSA Regional Public Affairs Office; this submission attached an invoice for

the "taking/rental of [his] private property pertaining to [the] matter for a total of $2,518.44," gave the SSA three business days to return his Certificate of Naturalization or arrange for him to obtain a new one at the SSA's cost, and demanded payment of the invoice "upon receipt." *Id.* ¶¶ 16-17 & Ex. A.  In July 2022, Ngambo applied, and paid, for a replacement Certificate of Naturalization.  *Id.* ¶ 18.  On August 23, 2022, he sent an updated invoice to the SSA, which included the additional costs to replace his Certificate of Naturalization, and delivered in person to the West Nyack SSA Office supervisor a copy of the updated invoice and relevant receipts. *Id.* ¶ 19 & Ex. B.  After waiting for more than six months from the submission of his original notice of intent to sue, Ngambo commenced this lawsuit in small claims court on January 13, 2023.  *Id.* ¶ 20.  The SSA removed the matter to this Court on February 6, 2023.  *Id.* ¶¶ 20-21; *see* ECF No. 1.

Based on the foregoing, the Amended Complaint asserts two claims for violations of the Fifth Amendment to the U.S. Constitution based on (1) the alleged deprivation of Ngambo's liberty and property without due process of law, and (2) the alleged taking of Ngambo's private property for the SSA's public use without just compensation.  Am. Compl. ¶¶ 3-4 & at pg. 6 ¶ 1.[2]  Ngambo seeks equitable relief and a money judgment in the amount of $4,595.99, plus interest, $10,000 for pain and suffering, and an unspecified amount of punitive damages.  *Id.* at pg. 6 ¶ 2.

---

[2] The SSA also reads the Amended Complaint as alleging a claim for negligence, and argues that any such negligence claim should be dismissed.  *See* ECF No. 20 ("Def.'s Mem.") at 1, 4, 8-10.  Given Ngambo's *pro se* status, this Decision and Order also addresses the purported negligence claim.

**DISCUSSION**

I.    **Legal Standards**

A.    **Dismissal Under Rule 12(b)(1)**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may assert

lack of subject matter jurisdiction as a defense by motion.  Fed. R. Civ. P. 12(b)(1).  "It is

axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over

which they lack subject matter jurisdiction.  Unlike failure of personal jurisdiction, failure of

subject matter jurisdiction is not waivable and may be raised at any time by a party or by the

court *sua sponte*."  *Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir.

2000); *see also Ahmed v. Holder*, 624 F.3d 150, 154 (2d Cir. 2010) (*per curiam*) ("[W]e may not

exercise jurisdiction that we otherwise lack simply because the parties will allow it.").

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l*

*Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up).  "A plaintiff asserting

subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it

exists."  *Id*. (cleaned up).  "The court must take all facts alleged in the complaint as true and

draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively,

and that showing is not made by drawing from the pleadings inferences favorable to the party

asserting it."  *Id.* (cleaned up).

B.    **Dismissal Under Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may assert a

failure to state a claim upon which relief can be granted as a defense by motion.  Fed. R. Civ. P.

12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pleaded factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020). The court must also "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*). That said, a court is not required to accept legal conclusions set forth in a complaint as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, to survive a motion to dismiss, a complaint must set forth sufficient facts "to state a claim to relief that is plausible on its face." *Id.* (cleaned up). A claim is facially plausible when the complaint contains enough facts to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* Put another way, a plaintiff must set forth enough facts to "nudge [his or her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Lynch*, 952 F.3d at 75 (cleaned up).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

### C.    Construing *Pro Se* Pleadings

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest.*" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (quotation marks omitted) (emphasis in original). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 475 (cleaned up). But "[a]lthough the courts must liberally construe a *pro se* litigant's papers when considering a motion to dismiss under Rule 12(b)(1), jurisdictional requirements are not relaxed based on a litigant's *pro se* status." *Travis v. Comm'r of Soc. Sec.*, No. 22-cv-8640 (JMF) (BCM), 2024 WL 496776, at *6 (S.D.N.Y. Jan. 22, 2024) (cleaned up), *adopted by* 2024 WL 498097 (S.D.N.Y. Feb. 8, 2024).[3] Moreover, even though a *pro se* complaint must be construed liberally to raise the strongest arguments it suggests, "[n]onetheless, a *pro se* complaint must state a plausible claim for relief." *Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 114 (2d Cir. 2020).

## II.    Analysis

### A.    Lack of Subject Matter Jurisdiction

#### 1.    Fifth Amendment Due Process Claim

Ngambo's first claim is that he was deprived of liberty and property without due process in violation of the Fifth Amendment. The SSA contends that this Court does not have subject

---

[3] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) and Local Rule 7.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases, *infra*, that are unpublished or only available by electronic database will be simultaneously delivered to *pro se* Plaintiff along with this Decision and Order.

matter jurisdiction to adjudicate a claim for a Fifth Amendment due process violation. *See* Def.'s Mem. at 5-6

Neither the United States nor federal agencies may be sued unless there has been a waiver of sovereign immunity that allows the claim in question to be filed against the federal government. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *United States v. Testan*, 424 U.S. 392, 399 (1976). An action against the United States may proceed only in accordance with federal statute and under such conditions as Congress may impose. *Testan*, 424 U.S. at 399 ("[T]he United States, as sovereign, is immune from suit save as it consents to be sued and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (cleaned up). "The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction." *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urb. Dev.*, 175 F.3d 132, 139 (2d Cir. 1999). The protections of sovereign immunity extend to federal agencies such as the SSA. *See Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."); *Wheeler v. Soc. Sec. Admin.*, No. 10-cv-01679 (LJO) (JLT), 2010 WL 3784891, at *3 (E.D. Cal. Sept. 24, 2010) ("As an agency of the United States, the SSA possesses the same sovereign immunity as the United States.").

It is well settled that there is no statute that generally waives the sovereign immunity of the United States or its agencies for claims alleging that federal government employees have committed constitutional violations. *See Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("the United States has not waived its sovereign immunity with respect to claims that its

employees have committed constitutional torts"); *Bey v. Trump*, 850 F. App'x 809, 810 (2d Cir. 2021) (summary order) (same).  Nor does the Little Tucker Act, 28 U.S.C. § 1346(a), provide an avenue to obtain money damages for an alleged violation of the Due Process Clause.  That statute "provides a waiver of sovereign immunity and a grant of federal jurisdiction over constitutional claims for money damages only where the constitutional provision in question mandates payment of money damages," and "[t]he Due Process Clause is not such a provision." *Am. Fed'n of Gov't Emps. Loc. 1 v. Stone*, 146 F. App'x 704, 705 (5th Cir. 2005) (*per curiam*); *see Duarte v. United States*, 532 F.2d 850, 852 (2d Cir. 1976).[4]

And contrary to Ngambo's suggestion in his opposition brief, *see* ECF No. 22 ("Pl.'s Mem.") at 3 ¶ 6, the statute that re-established the SSA as an independent agency does not include language indicating that the agency can "sue and be sued."  *See* Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464; *compare Meyer*, 510 U.S. at 480 (addressing this language in the statute that established the Federal Savings and Loan Insurance Corporation).  Therefore, the argument that there has been a waiver of sovereign immunity that would allow Ngambo to proceed with this claim against the SSA based on such "sue and be sued" language is without merit.  *See McKenzie v. Soc. Sec. Admin.*, No. 23-cv-01620 (CDB), 2024 WL 233181, at *3 (E.D. Cal. Jan. 22, 2024) ("Plaintiffs' action against the [SSA] is barred for lack of subject matter jurisdiction because the agency cannot be sued *eo nomine*."); *see also Blackmar v. Guerre*, 342 U.S. 512, 515 (1952) ("When Congress authorizes one of its agencies to be sued *eo nomine*, it does so in explicit language, or

---

[4] There is no dispute that the Court *does* have subject matter jurisdiction to consider Ngambo's claim, pursuant to the Little Tucker Act and the Takings Clause of the Fifth Amendment, that the SSA allegedly took Ngambo's private property for the SSA's public use without just compensation.  That claim is addressed in Section II.B, *infra*.

impliedly because the agency is the offspring of such a suable entity."); *Anthony B. v. Comm'r Soc. Sec. Admin.*, No. 22-cv-00407 (SB), 2024 WL 3510960, at *10 (D. Or. July 23, 2024) (explaining that the United States has not waived its sovereign immunity with respect to claims for damages against the SSA for an alleged Fifth Amendment due process violation).

For all of these reasons, the Court lacks subject matter jurisdiction over Ngambo's claim against the SSA for violation of his Fifth Amendment right to due process.

## 2.    Negligence Claim

To the extent that the Amended Complaint may be read to assert a negligence claim[5], the SSA maintains that the Court lacks subject matter jurisdiction over that claim because Ngambo has not alleged that he complied with the requirements of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-80 ("FTCA").  *See* Def.'s Mem. at 9.

The FTCA "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived its sovereign immunity and rendered itself liable." *Meyer*, 510 U.S. at 477 (cleaned up).  This category includes claims that are:

> [1] against the United States, [2] for money damages, [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his [or her] office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id.* (quoting 28 U.S.C. § 1346(b)).

---

[5] The request for relief in the Amended Complaint states that Ngambo seeks "$10,000 for the pain and suffering and other immeasurable damages that this situation has inflicted on me as well as punitive damages to deter the SSA bureaucracy from harming by their negligence and abuse, the very people they are supposed to serve."  Am. Compl. at pg. 6.

Ngambo did not respond to the SSA's arguments regarding dismissal of any negligence claim in the Amended Complaint; that portion of the SSA's motion to dismiss could be granted for this reason alone. *See Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 46 n. 1 (2d Cir. 2018) (summary order) ("Construing her *pro se* submission liberally, Wilkov appears to challenge the District Court's dismissal of her stand–alone claims for fraud and fraudulent concealment. We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss."); *McNair v. Ponte*, No. 16-cv-1722 (LAP), 2019 WL 1428349, at *6 (S.D.N.Y. Mar. 29, 2019) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed. This Court has deemed claims abandoned even in cases where the plaintiff was proceeding *pro se*.") (cleaned up). Moreover, Ngambo makes no mention, either in the Amended Complaint or in his opposition submission, of the FTCA, the procedural requirements of the statute, or that he is seeking to assert a tort claim for negligence. Nonetheless, in light of Ngambo's *pro se* status, the Court addresses the viability of any purported negligence claim that could be gleaned from the pleadings. *See, e.g., Lewis v. City of Newburgh*, No. 20-cv-7973 (CS), 2021 WL 6052135, at *8 n.11 (S.D.N.Y. Dec. 20. 2021) (court did not deem claim abandoned despite failure to respond to defendants' argument for dismissal "in light of [p]laintiff's *pro* se status," and then dismissed claim on the merits).

As part of the limited waiver of sovereign immunity in the FTCA, the statute "requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508

U.S. 106, 113 (1993)); *see* 28 U.S.C. 2675(a).  The requirement "extends to all suits, including those begun in state court."  *Id.*

With respect to exhaustion, the FTCA provides that an "action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate federal agency and his [or her] claim shall have been finally denied by the agency in writing . . . ."  28 U.S.C. § 2675(a).  This "procedural hurdle" of requiring a plaintiff to "first file an administrative claim with the appropriate federal agency before suing for relief in federal court," "applies equally to litigants with counsel and to those proceeding *pro se*." *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).  "'The burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory requirements,' including exhaustion," and "'[i]n the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim.'"  *Manchanda v. Lewis*, No. 21-1088-cv, 2021 WL 5986877, at *2 (2d Cir. Dec. 17, 2021) (summary order) (quoting *In re Agent Orange Prod. Liab.* Litig., 818 F.2d 210, 214 (2d Cir. 1987)) (cleaned up).  Courts "must strictly construe matters concerning the waiver of sovereign immunity in favor of the government."  *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019); *see also id.* at 81 ("The Supreme Court has frequently held that waivers of sovereign immunity are to be strictly construed, in terms of their scope, in favor of the sovereign.") (cleaned up).

The SSA has established formal procedures that potential claimants must follow in order to present any tort claim to the agency under the FTCA.  *See* 20 C.F.R. § 429.101, *et seq.* Among other things, a claimant must present his or her claim to the agency by sending it to the Office of the General Counsel, Office of General Law, Social Security Administration, Attn: FTCA Claims, 6401 Security Boulevard, Baltimore, MD 21235.  *See* 20 C.F.R. § 429.102(a), (c).

Ngambo does not allege anywhere in the Amended Complaint that he presented any claim to the SSA in this manner.  Instead, Ngambo alleges—and the attached invoices reflect—that he only sent and/or delivered his notices of intent to sue and invoices to the West Nyack SSA Office and SSA Regional Public Affairs Office.  *See* Am. Compl. ¶¶ 11, 13, 16, 19 & Exs. A-B.; *but see* 20 C.F.R. § 429.102(a) ("we consider your claim to be filed on the date we receive it *at the address specified in paragraph (c) of this section*" (emphasis added) (*i.e.*, the Office of General Counsel address noted above)).  Therefore, Ngambo has failed to allege in the Amended Complaint that he complied with the FTCA exhaustion requirement, and any purported claim for negligence therefore must be dismissed.  *See Bierman v. Comm'r Soc. Sec. Admin.*, No. 16-cv-1389 (PP), 2019 WL 5191250, at *5 (E.D. Wis. Oct. 15, 2019) ("The plaintiff does not, however, allege that she took the steps outlined in 20 C.F.R. § 429.102 . . . .  Because the law requires a plaintiff to exhaust her administrative remedies before pursuing an FTCA claim, and because she hasn't shown that she did that, the court would have to dismiss her case . . . ."); *Williams v. United States*, No. 12-cv-1885 (GHK), 2012 WL 12888102, at *4 (C.D. Cal. May 11, 2012) ("Indeed, the applicable federal regulation requires that a claim form be sent to the SSA Office of the General Counsel in Baltimore, Maryland . . . .  Thus, insofar as [p]laintiff alleges that he sent a claim form to the SSA Offices in El Monte, California and Richmond, Virginia, he has not shown that he properly filed a claim with the SSA."); *Armstrong v. Astrue*,  569 F. Supp. 2d 888, 899 (D. Minn. 2008) ("[T]he [p]laintiff was required to file an FTCA claim with the SSA's Claims Office in Baltimore, Maryland—not with the local SSA office—in order to seek an agency determination, which would allow for judicial review.").[6]

---

[6] The SSA submitted additional information outside of the pleadings to support its argument regarding Ngambo's failure to comply with the presentment requirement of 28 U.S.C.

In sum, Ngambo's failure to respond to the SSA's arguments regarding dismissal of any negligence claim in the Amended Complaint, coupled with his failure, in any event, to plead and prove that he complied with the procedural requirements of the FTCA and exhausted his administrative remedies prior to filing this lawsuit, require that any purported claim of negligence in the Amended Complaint be dismissed for lack of subject matter jurisdiction.

### 3.    Breach of Contract Claim[7]

To the extent that the Amended Complaint may be read to assert a claim for breach of contract because "actions of SSA Nyack personnel led [Ngambo] to believe that the SSA would reimburse him for lost time and money," the SSA contends that such claim also should be dismissed for lack of subject matter jurisdiction.  Def.'s Mem. at 7-8.

The Little Tucker Act provides that "district courts shall have original jurisdiction . . . of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon . . . any express or implied contract with the United States."  28 U.S.C. § 1346(a)(2).  According to the SSA, because Ngambo fails to adequately allege the existence of a contract, "sovereign immunity requires dismissal for lack of subject matter jurisdiction to the extent Plaintiff asserts a contract-based claim."  Def.'s Mem. at 8.  Whether or not there is an applicable waiver of sovereign immunity is a question that is "jurisdictional in nature."  *Wake v. United States,* 89 F.3d 53, 57 (2d Cir. 1996).  Thus, where the question presented on a motion to

---

§ 2675(a).  *See* ECF No. 21.  The Court has not relied on this additional material in any way as part of this Decision and Order.

[7] Although there is no express claim for breach of contract in the Amended Complaint, Ngambo argues in his opposition papers that sovereign immunity does not pose a bar to his case because it "has all the characteristics of an implied contract."  *See* Pl.'s Mem. ¶ 7.  Accordingly, in light of Plaintiff's status as a *pro se* litigant, the Court considers whether the Amended Complaint can be read to assert a viable breach of contract claim.

dismiss is whether there has been a waiver of sovereign immunity, it is appropriate to treat that motion as a jurisdictional challenge under Rule 12(b)(1) of the Federal Rules of Civil Procedure, rather than an effort to dismiss for failure to state a claim under Rule 12(b)(6).  *See id.*; *see also Turner v. United States*, No. 13-248 C, 2014 WL 814870, at *4 (Fed. Cl. Feb. 12, 2014) ("A plaintiff's failure to allege facts supporting each of the required elements of an [express or] implied-in-fact contract requires dismissal for lack of subject matter jurisdiction."); *Fleming v. United States*, 413 F. Supp. 2d 503, 506 (E.D. Pa. 2005) ("In order for the Court to have jurisdiction over a contract claim against the United States under the Tucker Act, the plaintiff must show an express contract or a contract implied-in-fact."); *but see Am. Fed'n of Gov't Emps. Loc. 1* 146 F. App'x at 705 ("The determination of whether a contract existed between [the plaintiff] and the Transportation Security Administration (TSA) requiring payment of the salary specified in the offer letter is determinative of both the district court's jurisdiction under the Little Tucker Act and the merits of [the plaintiff's] breach of contract claim.  The district court was therefore required to assume jurisdiction and decide the claim on the merits.").

Because Ngambo does not plausibly allege the existence of either an express contract or an implied-in-fact contract between himself and the SSA, any purported cause of action based on a breach of contract theory must be dismissed.  To establish the existence of either an express or implied-in-fact contract, a plaintiff must plead "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract."  *Hoag v. United States*, 99 Fed. Cl. 246, 253 (Fed. Cl. 2011) (elements of an express contract claim) (quotation marks omitted); *see Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (*en banc*) (To establish the existence of an implied-in-fact contract with the United States, a plaintiff must

plead "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance[;] and (4) 'actual authority' on the part of the government's representative to bind the government.") (citation omitted); *see also Presidential Gardens Assocs.*, 175 F.3d at 141 ("Any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically:  mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.") (cleaned up).

Among other things, Ngambo does not allege that he received an unambiguous offer from the SSA to pay the expenses he incurred in trying to resolve the issue of his missing Certificate of Naturalization; instead, he alleges only that the SSA failed to respond when he submitted his invoices to the SSA Regional Public Affairs Office.  *See* Am. Compl. ¶ 20.  Ngambo also fails to allege that the SSA supervisor in the West Nyack Office had any authority at all to bind the government; rather, he alleges that the supervisor had said that she would "escalate the issue," but then she failed to do so, and although she accepted a copy of his June 21, 2022 notice of intent to sue, she asked him to send a copy of it to the SSA Regional Public Affairs Office.  *Id.* ¶¶ 10-13.  Similarly, although he delivered a copy of his updated invoice to the SSA supervisor in the West Nyack Office on August 23, 2022, he also sent a copy of it to the SSA Regional Public Affairs Office.  *See id.* ¶ 19 & Ex. B.

In his opposition to the motion to dismiss, Ngambo states only that his case

> is clearly authorized beyond reach of sovereign immunity as Plaintiff's case has all the characteristics of an implied contract, to wit: (i) opposing parties with capacity to contract, (ii) a meeting of the minds having a clear understanding of the obligations of the of-record applications of the interaction between Plaintiff and Defendant, (iii) consideration tendered by Plaintiff and accepted by Defendant, and (iv) the agreement not unconscionable or in offense to public policy WHERE DEFENDANT FLAGRANTLY, THROUGH NEGLIGENCE, FAILED IN RE

SPECIFIC PERFORMANCE RESULTING IN DAMAGES IN FACT TO PLAINTIFF.

Pl.'s Mem. ¶ 7.  These conclusory assertions do not address the fundamental deficiencies in the Amended Complaint: the lack of any specific allegations regarding an actual agreement between Ngambo and the SSA, and the absence of any indication that anyone from the SSA with whom he interacted had actual authority to bind the government.

Because the Amended Complaint does not contain allegations sufficient to establish the existence of an express or implied-in-fact contract between Ngambo and the SSA, there is no basis to invoke this Court's jurisdiction under the Little Tucker Act.  Accordingly, this purported claim also must be dismissed for lack of subject matter jurisdiction.

* * * * * * * * * *

When claims are dismissed for lack of federal subject matter jurisdiction, Article III of the U.S. Constitution deprives federal courts of the power to dismiss those claims with prejudice. *See*, *e.g., Russo v. United States*, No. 22-1869-cv, 2024 WL 726884, at *2 (2d Cir. Feb. 22, 2024) (summary order).  Accordingly, the SSA's motion to dismiss Ngambo's claim for a violation of his Fifth Amendment right to due process, and his purported claims for negligence and breach of contract, is GRANTED, but the dismissal of these claims is without prejudice.

**B.      Failure to State a Claim—Fifth Amendment Takings Clause**

The Court does have subject matter jurisdiction over Ngambo's claim pursuant to the Takings Clause of the Fifth Amendment.  A plaintiff may sue for a Takings Clause violation through the Tucker Act.  *See Maine Cmty. Health Options v. United States*, 590 U.S. 296, 323 n.12 (2020) ("Although there is no express cause of action under the Takings Clause, aggrieved owners can sue through the Tucker Act under our case law.").  Under the Little Tucker Act, "district courts shall have original jurisdiction, concurrent with the United States Court of

Federal Claims, of . . . [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon the Constitution . . . ."  28 U.S.C. § 1346(a)(2). Accordingly, because Ngambo's Takings Clause claim is for less than $10,000, *see* Am. Compl. Ex. B (invoice for $4,595.99), it falls within the ambit of the Little Tucker Act.  Nonetheless, it must be dismissed for failure to state a claim.

The Takings Clause states that "private property [shall not] be taken for public use without just compensation."  U.S. Const. amend. V.  Here, Ngambo alleges that the SSA took his private property "including but not limited to, my time, my automobile," as well as "additional costs [he] incurred with [his] re-applying for a replacement Certificate of Naturalization."  *See* Am. Compl. ¶¶ 12, 17, 19 & Exs. A, B.[8]  Even assuming that the SSA's alleged loss of Ngambo's original Certificate of Naturalization, and/or the agency's failure to take action to find or replace the Certificate of Naturalization, which caused Ngambo to spend his own time and money to procure a replacement, constitutes a taking of Ngambo's private property, there is no question that such takings do not constitute a taking of private property "for public use."  *See*, *e.g.*, *Chyung v. City of Norwich*, No. 22-cv-712 (MPS), 2023 WL 3289088, at *3 (D. Conn. May 5, 2023) ("When police officers steal or lose a citizen's personal property, there is no 'public use' of property implicating the Fifth Amendment."); *Gauthier v. Kirkpatrick*, No. 13-cv-187, 2013 WL 6407716, at *7 n.8 (D. Vt. Dec. 9, 2013) (concluding that plaintiffs had not alleged a

---

[8] The June 23, 2022 invoice assesses charges for (i) gas mileage attributable to Ngambo's trips to both the post office and the West Nyack SSA Office, (ii) Ngambo's time spent in making those trips, and (iii) time spent in drafting and mailing his legal notice of intent to sue.  *See* Am. Compl. Ex. A.  The August 23, 2022 invoice assesses charges for (i) time spent, a money order, and the mailing fee related to Ngambo's application for a replacement Certificate of Naturalization, (ii) gas mileage attributable to a trip to the West Nyack SSA Office, and (iii) the money past due from the June 23, 2022 invoice.  *See id.* Ex. B.

cognizable takings claim when they alleged that "personal property was stolen, not taken by the government for 'public use'").

Accordingly, the SSA's motion to dismiss Ngambo's Takings Clause claim for failure to state a claim is GRANTED. The dismissal of this claim is with prejudice because even with the filing of an amended complaint, Ngambo has alleged no facts that would cure the deficiencies in his pleading with respect to his Takings Clause claim, and there is no reason to believe that further amendment would enable him to cure these deficiencies. *See, e.g., Vazquez v. City of New York,* No. 21-cv-1573 (PAE) (VF), 2022 WL 17370156, at *13 (S.D.N.Y. Dec. 2, 2022) (dismissing certain claims of *pro se* plaintiff with prejudice where plaintiff had already amended his complaint once and "it is apparent that further amendments will be unable to cure the deficiencies in [these] claims" and "[a]ny attempt by [plaintiff[] to replead these claims would be futile").

### III.    Motion to Disqualify

While the motion to dismiss was pending, Ngambo filed a motion to disqualify the undersigned. ECF No. 28 ("Disqual. Mot."). In the motion, Ngambo cites two provisions of the statute governing the disqualification of judges: (1) that "[a]ny . . . magistrate judge of the United States shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a); and (2) that a judge must disqualify himself or herself when he or she "is known . . . to have an interest that could be substantially affected by the outcome of the proceeding," 28 U.S.C. § 455(b)(5)(iii).

The first alleged ground for disqualification, which appears to be based on the notion that this Court's impartiality might reasonably be questioned, is that the undersigned supposedly "provided assistance of counsel to attorneys purporting to represent defendant [SSA] depriving

Ngambo due process of law, equal protection of the laws, and judicial review of Ngambo's

claims by contravening the Federal Rules of Civil Procedure[.]"  Disqual. Mot. at 1.  According

to Ngambo, the SSA's motion to dismiss is actually a demurrer—a type of motion that is no

longer allowed under the Federal Rules of Civil Procedure—and this Court is improperly

allowing the SSA to proceed with the filing of a demurrer.  *Id.* at 1-3.  In addition, Ngambo

suggests that the SSA's motion to dismiss should have been converted to a motion for summary

judgment because matters outside the pleadings were presented to, and not excluded by, this

Court.  *Id.* at 3.  Ngambo states that he

> presumes that [Judge] Krause is highly intelligent, well-trained and
> competent in the law and therefore understands that where [the SSA] has
> imposed on [Judge] Krause to consider matters not-of-record yet has failed
> to introduce these matters by and through witnesses competent to testify
> where [Judge] Krause shows prejudice to Ngambo's rights for [Judge]
> Krause's failure to deny [the SSA's] motion as insufficient to invoke
> [Judge] Krause's Court's authority.

*Id.*

First, the accusation that this Court provided "assistance" to counsel for the SSA is

entirely meritless.  Second, the SSA's motion to dismiss as filed was not an improper demurrer,

and there is no reason why the motion to dismiss ought to have been converted into a motion for

summary judgment.  While the SSA did submit material outside of the pleadings, the Court has

not considered that document for purposes of deciding this motion.  *See* footnote 6, *supra*.

Ngambo's apparent dissatisfaction with this Court's decisions regarding certain filings is not a

valid basis for questioning this Court's impartiality.  "Generally, claims of judicial bias must be

based on extrajudicial matters[,]" and "adverse rulings, without more, will rarely suffice to

provide a reasonable basis for questioning a judge's impartiality."  *Kelly v. New York State

Unified Ct. Sys.*, No. 21-1633, 2022 WL 1210665, at *2 (2d Cir. Apr. 25, 2022) (summary order)

(cleaned up).  That Ngambo takes issue with how the Court has handled the SSA's motion to dismiss or Ngambo's own motion for summary judgment as procedural or legal matters is not a basis to grant his motion for disqualification.

The second alleged ground for disqualification cited by Ngambo is that this Court "shares the paymaster of the [SSA] as well as the United States Attorney notwithstanding The Clearfield Doctrine applies to THE SSA meaning the SSA MUST employee counsel not a government employee [Judge] Krause shows favoritism to both depriving Ngambo of an impartial trier of fact."  Disqual. Mot. at 3.  This Court rejects any suggestion it is not impartial or has an interest in the outcome of the case because the undersigned is employed by the federal government— albeit in a different branch of the federal government from either the SSA or the United States Attorney for the Southern District of New York.  This argument cannot be a basis for disqualification, because to find otherwise would lead to the absurd conclusion that no federal judge could ever preside over any case involving the United States, a federal agency, or a federal employee.

As to Ngambo's invocation of the "*Clearfield* Doctrine," this also does not provide a basis for disqualification.  Courts have noted that "[t]he primary doctrine derived from *Clearfield* [*Trust v. United States*, 318 U.S. 363 (1943)] is that federal common law will displace state law, and can be created by federal courts, only when uniquely federal interests are involved and the application of state law would significantly conflict with federal policy or objectives."  *Davila v. Lang*, 343 F. Supp. 3d 254, 268 (S.D.N.Y. 2018) (quotation marks omitted).  To the extent the doctrine might relate at all to this case, courts have rejected the assertion that the *Clearfield Trust* doctrine constitutes a waiver of sovereign immunity by the United States, noting that in the *Clearfield Trust* case, "the Supreme Court held that federal law governs questions concerning the

rights of the federal government under federal programs, such that, in the absence of an act of Congress applicable to the functioning of such programs, the federal courts may fashion an appropriate and governing rule of law according to their own standards." *Id.* (quotation marks omitted).

To the extent Ngambo is arguing that this Court lacks impartiality in failing to find a waiver of sovereign immunity with respect to his claims pursuant to the *Clearfield Trust* doctrine, this again amounts to no more than displeasure with the Court's ruling on the issue of sovereign immunity and is not a basis for disqualification. *See Kelly*, 2022 WL 1210665, at *2.

For all of these reasons, Ngambo's motion to disqualify is DENIED.

## IV.    Notice of Rescission

After filing the motion to disqualify, Ngambo filed a document titled "Notice of Rescission," in which he states that he "rescinds his signature previously given on consent to a magistrate judge's authority dated February 9, 2023, based on prejudice that manifested when [Magistrate Judge] Krause denied his Motion for Summary Judgement."  ECF No. 29.  It is well-established, however, that parties are not permitted to withdraw their consent to proceed before a magistrate judge simply because they do not like a particular ruling from the magistrate judge.

"Litigants enjoy no absolute right to withdraw a validly given consent to proceed before a magistrate judge." *Savoca v United States*, 199 F. Supp. 3d 716, 721 (S.D.N.Y. 2016) (quotation marks omitted).  "Once a case is referred to a magistrate [judge] under section 636(c), the reference can be withdrawn only by the district court, and only for good cause shown on its own motion, or under extraordinary circumstances shown by any party." *Dale v. Raczynski*, No. 21-

1602, 2022 WL 4479528, at *1 (2d. Cir. Sept. 27, 2022) (summary order) (cleaned up).[9]  "The 'extraordinary circumstances' standard is a high bar that is difficult to satisfy."  *Savoca,* 199 F. Supp. 3d at 721.  "When a party comes to rue an adverse ruling, she or he cannot simply return to the district judge.  The magistrate judge's authority is binding."  *Id.* (cleaned up); *see Dale*, 2022 WL 4479528, at *2 ("[A]dverse rulings are an inherent part of adversary proceedings, not 'extraordinary' events.").  "The proper means by which to correct perceived erroneous rulings is to take an appeal, not to seek the eviction of the magistrate judge from the case."  *Savoca,* 199 F. Supp. 3d at 721 (quotation marks omitted).

Here, Ngambo cites no "extraordinary circumstance" to justify the attempt to withdraw his consent to proceed before the assigned magistrate judge.  The only basis for Ngambo's request to withdraw his consent is what he perceives as "prejudice that manifested when [Magistrate Judge] Krause denied his Motion for Summary Judgement."  ECF No. 29.  To allow the withdrawal of consent under these circumstances would be to countenance blatant forum shopping.  Accordingly, Ngambo's application to withdraw his consent to proceed before the assigned magistrate judge is DENIED.

## CONCLUSION

For the reasons set forth above, the SSA's motion to dismiss (ECF No. 19) is GRANTED, and the Amended Complaint is dismissed without prejudice as to all claims except for Ngambo's Fifth Amendment Takings Clause claim, which is dismissed with prejudice.  In addition, Ngambo's motion to disqualify (ECF No. 28) is DENIED, and Ngambo's Notice of

---

[9] The Second Circuit "has assumed that magistrate judges have jurisdiction to adjudicate motions to withdraw consent to their jurisdiction[.]"  *Dale*, 2022 WL 4479528, at *1.

Rescission (ECF No. 29), which the Court treats as a motion to withdraw consent to proceed before the assigned magistrate judge, is DENIED.

The Clerk of Court is respectfully directed to terminate the outstanding motions and close the case.

Dated: September 16, 2024
        White Plains, New York

                                        **SO ORDERED**.

                                        _____
                                        ANDREW E. KRAUSE
                                        United States Magistrate Judge

A copy of this Decision and Order has been mailed to the *pro se* Plaintiff by Chambers.

24